# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **WILLIS D. O'BERRY** | * | **CIVIL ACTION NO. 16-CV-3569** |
| | * | |
| **VERSUS** | * | **JUDGE SUSIE MORGAN** |
| | * | |
| **ENSCO INTERNATIONAL, INC,** | * | **MAG. SALLY SHUSHAN** |
| **and ENSCO PLC** | * | |

\* \* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \* \* \*\* \* \* \* \* \* \* \*

### ENSCO PLC'S AND ENSCO INTERNATIONAL'S MEMORANDUM IN SUPPORT OF ITS RULE 12 MOTION TO DISMISS

Plaintiff, Willis D. O'Berry, sued ENSCO International, Inc. and ENSCO plc for Jones Act negligence and unseaworthiness, alleging that he injured his neck during an onshore water survival training course provided by SMTC Global in Saudi Arabia. However, Mr. O'Berry's claims should be dismissed pursuant to Rule 12 of the Federal Rules of Civil Procedure for a variety of reasons. First, this Court lacks subject matter jurisdiction over the plaintiff's suit as the alleged claims are not subject to admiralty jurisdiction or federal question jurisdiction given that U.S. law does not apply and the alleged incident took place onshore in Saudi Arabia. Second, this Court lacks personal jurisdiction over the defendants as the accident occurred overseas and only involves foreign defendants who lack sufficient minimum contacts with Louisiana. For similar reasons, this case should also be dismissed on forum non conveniens grounds. Third, the plaintiff's Jones Act claims against ENSCO plc and ENSCO International are subject to dismissal on 12(b)(6) grounds considering the plaintiff was never employed by either entity. Rather, he was employed by a separate and distinct Cayman corporation, ENSCO Limited. Finally, the plaintiff's unseaworthiness claim should be dismissed on 12(b)(6) grounds as the alleged accident occurred onshore and never involved a vessel.

## BACKGROUND

On April 21, 2016, the plaintiff, a Mississippi resident, filed Jones Act negligence and unseaworthiness claims against ENSCO International, Inc. and ENSCO plc, alleging that he injured his neck onshore during an SMTC Global water survival training course in Saudi Arabia. Specifically, the plaintiff alleges that the defendants, as his Jones Act employers, were negligent in requiring him to participate in this training as part of his duties as a crew member of the *ENSCO 88* without first clearing him medically for such training. (R. Doc. 1, ¶ 18). Further, despite the fact that the plaintiff's alleged injuries occurred onshore away from his assigned vessel, the plaintiff asserts that the *ENSCO 88* was unseaworthy because the crew leadership failed to recognize the hazards of this water survival course before requiring the plaintiff to attend. (*Id.* at ¶ 20-23).

Contrary to the plaintiff's claims, neither ENSCO plc nor ENSCO International ever employed the plaintiff. Rather, the plaintiff was employed by ENSCO Limited, a separate and distinct Cayman subsidiary of ENSCO plc that maintains all corporate formalities and governs its own books and operations. *Exhibit 1*, Declaration of Steve Brady, Senior Vice President – Eastern Hemisphere for ENSCO plc; *Exhibit 2*, Declaration of Paula Hall, Human Resources Manager for ENSCO Limited. As an employee of ENSCO Limited, the plaintiff never received a W-2 or any other financial documentation issued by an American company. *Id.*

Contrary to the plaintiff's Complaint, ENSCO plc, the parent of ENSCO Limited, is not based in Houston. Rather, ENSCO plc is a foreign corporation established and operating under the laws of the United Kingdom at 6 Chesterfield Gardens, London W1J5BQ, United Kingdom. *Id.* ENSCO plc further does not employ any United States citizens or offshore workers and does not conduct any operations in the United States. *Id.*

2

Neither ENSCO plc, ENSCO International, or ENSCO Limited own or operate the *ENSCO 88*. Rather, the *ENSCO 88* is a Liberian-flagged jackup drilling rig owned by ENSCO Offshore International Company, yet another separate and distinct Cayman subsidiary of ENSCO plc. *Id.*

In reality, the alleged Jones Act and unseaworthiness claims are not subject to the jurisdiction of this Court as they took place onshore in Saudi Arabia, involved claims against foreign corporations with little to no United States contacts, and are not governed by U.S. law. Rather, these cases should be governed by Saudi Arabian or British law and brought in either the United Kingdom, Cayman Islands, or Saudi Arabia, where the defendants are amenable to process. Alternatively, these claims should also be dismissed on 12(b)(6) grounds as the named defendants never employed the plaintiff and the *ENSCO 88* played no role in the alleged accident.

## LAW AND ARGUMENT

### *This Honorable Court Lacks Subject Matter Jurisdiction over ENSCO plc and ENSCO International Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure*

The plaintiff contends that this Court has subject matter jurisdiction via federal question jurisdiction under 28 U.S.C. § 1331 and admiralty jurisdiction via 28 U.S.C. § 1333. However, upon reviewing the pled facts of this case, the plaintiff's grounds for asserting jurisdiction have no merit, and thus, this suit should be dismissed, with prejudice, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

### A. Federal Question Jurisdiction

First, the plaintiff asserts that this Court has federal question jurisdiction pursuant to 28 U.S.C § 1331 as he has asserted claims pursuant to the Jones Act. (R. Doc. 1, ¶ 3A).

Unfortunately, the plaintiff's argument fails as United States law, including the Jones Act, does not govern this lawsuit.

Pursuant to 28 U.S.C. § 1331, the district courts have original jurisdiction over all civil actions arising under the laws of the United States. 28 U.S.C. § 1331. In determining whether or not a plaintiff may rely upon his claims under the Jones Act to assert federal question jurisdiction, federal courts generally apply a two-prong analysis. First, the court must determine whether the defendant is an employer as defined by the Jones Act. *Hellenic Lines, Ltd. v. Rhoditis*, 398 U.S. 306, 308-09; 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). If the defendant is determined to be an employer within the meaning of the Act, the Court must then determine the proper choice of law to govern the case. If it is found that United States law does not apply, then the Jones Act does not apply and there is no federal question jurisdiction. *Id.*; *see also Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Dracos v. Hellenic Lines, Ltd.*, 705 F.2d 1392 (4th Cir. 1983). The Supreme Court in *Lauritzen* enumerated seven factors for the court to consider in determining whether U.S. law and the Jones Act apply:

1) The place of the wrongful act;

2) The law of the ship's flag;

3) The allegiance or domicile of the injured seaman;

4) The allegiance of the shipowner;

5) The place where the contract of employment was made;

6) The inaccessibility of a foreign forum;

7) The law of the forum.

*Lauritzen*, 345 U.S. at 586-90. The *Rhoditis* Court later added the shipowner's base of operations as an eighth factor of consideration. *Rhoditis*, 398 U.S. at 309.

4

Notably, the application of these factors is not mechanical or exhaustive as they must be considered in light of the national interest served by the assertion of Jones Act jurisdiction. *Id.* However, in regards to the weight afforded to each factor, courts tend to place great weight on the law of the flag while the place of employment contract and law of the forum are not very important. *See Schexnider v. McDermott Int'l, Inc.*, 817 F.2d 1159, 1162 (5th Cir. 1987). For example, in *Stevenson v. Global Marine Drilling Co.*, the Western District of Louisiana conducted a *Lauritzen-Rhoditis* analysis and held that Canadian law applied to a seaman's personal injury suit against his Canadian employer where the seaman was injured during a survival training course in Canadian waters on a vessel sailing under Canadian registry:

> This court remains convinced by defendants' application of the required factors to the facts at hand. Plaintiff's injuries occurred off the Canadian coast on a vessel sailing under Canadian registry, operating out of Halifax, Nova Scotia and owned by a Canadian corporation. Plaintiff's focus upon his assignment to the GLOMAR LABRADOR I is misplaced. There is no causal connection between his injuries and his employment. Nor is there any relationship between any alleged unseaworthiness on the GLOMAR LABRADOR I and plaintiff's injuries.
>
> Nor is the contract between Glomar and Marican relevant in determining choice of law. Plaintiff's claim is for maritime tort, not breach of contract. *See Nicol*, 743 F.2d at 294-97. Furthermore, the record establishes the availability of a Canadian forum(s) for prosecution of plaintiff's personal injury claim. Canadian substantive law, like that of the United States, permits recovery for pain and suffering and the loss of past and future income.
>
> Consideration of the *Lauritzen-Rhoditis* factors convinces this court that Canadian law should apply to this dispute.

678 F.Supp. 1274, 1276 (W.D. La. 1987); *see also Bilyk v. Vessel Nair*, 754 F.2d 1541, 1543-45 (9th Cir. 1985). Furthermore, in *Fogleman v. ARAMCO*, the Fifth Circuit held that even when the seaman was an American citizen, Saudi Arabian law barred a seaman's Jones Act and general

maritime law claims pursuant to the *Lauritzen-Rhoditis* factors when the seaman worked for a

Saudi Arabian corporation and was injured on a platform off the coast of Saudi Arabia:

> Analysis of the facts of this case according to the *Lauritzen-Rhoditis* test demonstrates that the only significant factor pointing to the application of United States law is the domicile of the plaintiff. We have previously held that the allegiance of a plaintiff, even when recruited in the United States, does not mandate the application of United States law in a maritime suit when all the other factors indicate the application of foreign law.

> The Foglemans also contend that the remedy available to them under Saudi Arabian law is inadequate on its face and that the application of United States law to this suit is therefore required. The fact that the law of another forum may be more or less favorable to a plaintiff, however, does not determine choice of law. Moreover, this court has previously mandated the application of the Labor Law of Saudi Arabia to proceedings in the United States.

> We conclude that the district court correctly applied the *Lauritzen-Rhoditis* test and that the law of Saudi Arabia governs this suit.

920 F.2d 278, 284 (5th Cir. 1991).

Here, as in the *Stevenson* and *Fogleman* cases, the *Lauritzen-Rhoditis* factors indicate

British law or Saudi Arabian law, rather than United States law, will govern this suit. First, as to

the place of the wrongful act, the alleged negligent conduct and/or unseaworthiness occurred in

Al-Khobar, Saudi Arabia. Second, the law of the flag is irrelevant here considering the injury

occurred onshore and never involved the *ENSCO 88*, but to the extent the Court finds it

necessary, the *ENSCO 88* is a Liberian-flagged vessel. Third, neither ENSCO plc, as a British

Corporation, nor Plaintiff's actual employer, ENSCO Limited, a Cayman corporation, have any

allegiance to the United States or have any base of operations in the United States. Similarly, the

owner of the *ENSCO 88*, ENSCO Offshore International Company, is a Cayman corporation

with no allegiance to the United States. Further, as discussed in detail below in the discussion

regarding personal jurisdiction, neither defendant conducts regular business or has continuous contacts in the United States. Finally, as espoused in *Fogleman*, United States courts have previously applied Saudi Arabian law, and the fact that Saudi Arabian or British law may be more or less favorable to the plaintiff does not determine choice of law. *Fogleman*, 920 F.2d at 284 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)). The only factor favoring an application of U.S. law is the fact that the plaintiff is a U.S. citizen. However, *Fogleman* held that United States citizenship of the plaintiff, even when recruited to work abroad, does not mandate application of U.S. law. Applying these factors in their entirety, either British or Saudi Arabian law should govern this suit. As such, the plaintiff is barred from bringing his claims under the Jones Act and general maritime law, and therefore, there is no basis for federal question jurisdiction.

### B. Admiralty Jurisdiction

Besides federal question jurisdiction, the plaintiff asserts that his claim is subject to admiralty jurisdiction pursuant to 28 U.S.C. § 1333 via his claim of unseaworthiness. However, as discussed above, the plaintiff may not rely on his unseaworthiness claim as grounds for admiralty jurisdiction considering his unseaworthiness claim is governed by United States law, which does not apply to this suit.

Beyond the choice-of-law analysis, the facts surrounding the plaintiff's claim, even if presumed to be true, do not give rise to admiralty jurisdiction. In order to invoke federal admiralty jurisdiction, two requirements must be met: 1) the alleged tort must have a maritime situs; and 2) the alleged tort must bear a significant relationship to traditional maritime activity. *Taylor v. Kennedy Engine, Inc.*, 861 F.2d 127, 128 (5th Cir. 1988) (citing *Executive Jet v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)). In assessing the maritime situs

requirement, the courts will assess "whether the tort occurred on navigable water or whether injury suffered on land was caused by a vessel on navigable water." *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)). In determining whether the tort has a sufficient connection to maritime activity, the court will assess whether the incident has a potentially disruptive impact on maritime commerce or whether "the general character of activity giving rise to the incident shows a substantial relationship [to] traditional maritime activity." *Sisson v. Ruby*, 497 U.S. 358, 364, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).

Here, the plaintiff has failed to satisfy the requirements to invoke admiralty jurisdiction. First, the situs test is not met as the alleged tortious conduct did not occur on navigable waters; rather, it occurred onshore in a swimming pool during a training exercise at the SMTC Global training facility located at Khobar-Dammen Highway, Al-Khobar, 31952, Kingdom of Saudi Arabia. *Exhibit 2*. Further, this alleged onshore tort was not caused by a vessel in navigable waters, as again, it took place in onshore and the plaintiff was the only crewmember of the *ENSCO 88* to attend the course. *Id.* The alleged tortious activity is also not sufficiently connected to traditional maritime activity as the plaintiff was not serving a vessel at the time of his accident. *See Abt. v. Dickson Co.*, 251 Fed.Appx. 293, 295 (5th Cir. 2007) (longshoreman's land-based injury claim did not fall within admiralty jurisdiction as he was not servicing a vessel and no vessel was present at the time of his injury).

In invoking admiralty jurisdiction, the plaintiff relies solely on his unseaworthiness claim that the *ENSCO 88*'s leadership's failed to recognize the hazards of this onshore training course. However, this argument, as discussed in detail below, has no merit as it is predicated on a singular act of negligence by a vessel's crew rather than systemic conduct, which, by itself, does

not give rise to a claim of unseaworthiness as a matter of law. *See, e.g., Kyzar v. Vale Do Ri Doce Navegacai, S.A.*, 464 F.2d 285, 290-91 (5th Cir. 1972); *Owens v. Abdon Callais Offshore, LLC*, 2011 U.S. Dist. LEXIS 92856, at *14-15 (E.D. La. 8/19/11). Considering the alleged tortious conduct fails to meet the necessary requirements, this Court may not invoke admiralty jurisdiction over this suit and must dismiss the plaintiff's claims for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1).

### *This Honorable Court Lacks Personal Jurisdiction Over ENSCO plc and ENSCO Limited Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure*

This suit is also subject to dismissal on personal jurisdiction grounds. The determination of federal personal jurisdiction involves a two-step inquiry: (1) the law of the forum state must provide for the assertion of such jurisdiction; and (2) the exercise of jurisdiction under state law must align with due process under the 14th Amendment. *Jobe v. ATR Marketing, Inc.* 87 F.3d 751, 753 (5th Cir. 1996). The Louisiana Long-Arm Statute permits the exercise of personal jurisdiction over a non-resident to the fullest extent allowed under due process. *See* La.Rev.Stat. § 13:3201. Specifically, for a federal court in this state to exert personal jurisdiction over a non-resident defendant, the plaintiff must show that the defendant "purposefully established minimum contacts with the forum state" and the assertion of personal jurisdiction would comport with "fair play and substantial justice." *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 85 L. Ed. 2d 528, 105 S.Ct. 2174 (1985). The determination of whether a defendant establishes minimum contacts turns on whether the defendant should reasonably anticipate being hailed into court in the particular forum. *Id.* There are two types of minimum contacts: (1) those that provide for specific personal jurisdiction as they arise or are related to the cause of action; and (2) those that provide for general personal jurisdiction as they are "continuous and systemic." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

In regards to jurisdiction over parent corporations, the Fifth Circuit has held that "a foreign parent corporation is not subject to the jurisdiction of a forum state merely because the subsidiary is present or doing business there; the mere existence of a parent-subsidiary relationship is not sufficient to warrant the assertion of jurisdiction over a foreign parent." *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1159 (5th Cir.1983) (citing 2 J. Moore & J. Lucas, *Moore's Federal Practice* para. 4.25[6], at 4-272 (2d ed. 1982)). A parent corporation may only be subject to the personal jurisdiction in a forum based on the actions of its subsidiary if "the parent exerts such domination and control over its subsidiary that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation for the purposes of jurisdiction." *Id.* However, the Supreme Court has been hesitant to assign jurisdiction over a foreign parent subsidiary, concluding that even 100% ownership of subsidiary stock by the parent is insufficient to assert jurisdiction:

> Through ownership of the entire capital stock and otherwise, the defendant dominates the [subsidiary] corporation, immediately and completely, and exerts its control both commercially and financially in substantially the same way, and mainly through the same individuals, as it does over those selling branches or departments of its business not separately incorporated which are established to market the [] products in other states. The existence of the [subsidiary] company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations.

*Cannon Manufacturing Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). The *Cannon* Court denied jurisdiction over the foreign parent, concluding that "the corporate separation, though perhaps merely formal, was real." *Id.* at 337, 45 S.Ct. at 251. In sum, as long as a parent and subsidiary maintain separate and distinct corporate identities, the presence of one in the forum state may not be attributed to the other.

Here, neither ENSCO plc nor the plaintiff's employer, ENSCO Limited, ever established contacts giving rise to specific jurisdiction as the alleged accident occurred outside of Louisiana in Saudi Arabia. *See Crawford v. Offshore Pipelines Int'l*, 1998 U.S. Dist. LEXIS 6027 (E.D. La. 1993) ("specific jurisdiction is ruled out by the fact that [employee] sustained his injuries en route to India and therefore such injuries do not arise directly from [foreign employer's] Louisiana contact).

Further, in regards to general jurisdiction, "continuous corporate operations within a state [must be] so substantial and of such a nature as to justify suit…on causes of action arising from dealings entirely distinct from those activities." *Thomas v. Chevron USA, Inc.* 2015 U.S. Dist. LEXIS 98742 (S.D. Tex. 2015). Here, no such substantial corporate operations exist in Louisiana. ENSCO plc is a foreign corporation with its headquarters located at 6 Chesterfield Gardens, London W1J5BQ, United Kingdom. Being a British corporation, ENSCO plc does not conduct any business in Louisiana, does not own any property here, and does not employ any U.S. citizens or offshore workers. *See Exhibits 1 and 2*. While ENSCO plc is admittedly the parent corporation of ENSCO Limited, both corporations maintain all corporate formalities and separate books. *Id.* Due to this separateness, this Court may not assert personal jurisdiction over ENSCO plc as a parent corporation. *See Cannon*, 267 U.S. at 335.

ENSCO Limited is similarly an independent foreign subsidiary corporation headquartered in the Cayman Islands that does not conduct any business in the United States. The lone fact that ENSCO Limited, as a foreign corporation, was the employer of a Louisiana resident is insufficient to establish minimum contacts if there is no evidence of persistent contacts with the state. *See Colwell Realty Investments v. Triple T Inns*, 785 F.2d 1330, 1334 (5th Cir. 1986) (merely contracting with resident of forum state insufficient to subject non-resident to

forum's jurisdiction); *Williams v. Castro*, 21 F.Supp.2d 691, 693 (S.D. Tex. 1998) (three telephone calls from a California company regarding employment of Texas resident were insufficient contacts to establish personal jurisdiction in Texas). Given these facts, this Court may not assert personal jurisdiction over either ENSCO plc or ENSCO Limited, and thus, the plaintiff's claims must be dismissed pursuant to Fed.R.Civ.P. 12(b)(2).

### *The Plaintiff's Claims are Subject to Dismissal on Forum Non Conveniens Grounds*

The plaintiff's claims should also be dismissed on *forum non conveniens* grounds. In deciding whether to decline jurisdiction due to *forum non conveniens*, "the ultimate inquiry is where the trial will best serve the convenience of the parties and the ends of justice." *Koster v. Am. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067 (1947). In assessing *forum non conveniens*, the court must first decide whether U.S. or foreign law applies, as federal courts have agreed to entertain suits governed by U.S. law. *Volyrakis v. M/V ISABELLE*, 668 F.2d 863 (5th Cir. 1982). Should foreign law apply, the court will next consider whether another adequate forum is available where all defendants are amenable to process. *Reyno*, 454 U.S. at 254, n.22; *see also Syndicate 420 At Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 828 (5th Cir. 1986).  Finally, the court balances the public and private interests to determine whether the foreign forum will best serve the parties and the pursuit of justice. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The factors to be considered are: 1) private interests of the litigants; 2) relative ease of access to sources of proof; 3) availability of compulsory process; 4) costs of obtaining attendance of willing witnesses; and 5) the possibility of view of the premises. *Id.*

Here, as discussed above, an application of the *Lauritzen-Rhoditis* factors indicate that either British or Saudi Arabian law should govern this lawsuit. Further, the defendants are

amenable to suit in either the United Kingdom, Cayman Islands, or Saudi Arabia. Finally, the *Gulf Oil* factors all favor litigating this case abroad. ENSCO plc, as well as the plaintiff's actual employer, ENSCO Limited, are both alien corporations with little to no business operations in the United States. Further, as this incident took place in Saudi Arabia, all of the evidence and witnesses are located abroad, and there would be a substantial cost to not only completing the discovery process but also obtaining the attendance of witnesses for trial in a U.S. forum. In addition, the witnesses to the incident are not nationals or residents of the United States, and thus, are beyond the subpoena power of this Court. *See* 28 U.S.C. § 1783. Finally, the actual premises where this injury occurred is in Saudi Arabia. The only factor favoring the use of a U.S forum is the fact that the plaintiff is an American citizen. However, this interest is greatly outweighed by the substantial burden in both time and expense that would be placed on the defendants should they be forced to litigate this suit in the United States. Thus, in the interest of both convenience and justice, this court should dismiss the plaintiff's suit due to *forum non conveniens*.

### The Plaintiff's Claims are Subject to Dismissal on Rule 12(b)(6) Grounds

The defendants' Motion to Dismiss is also grounded in Federal Rule of Civil Procedure 12(b)(6). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Rule 12 is designed to expedite and simplify litigation by avoiding the costs of discovery and trial when the plaintiff's complaint is based on a false legal premise. *Neitzke v. Williams,* 490 U.S. 319, 326-27, 104 L. Ed. 2d 338, 109 S. Ct. 1827 (1989); 5A WRIGHT & MILLER, § 1342, at 161. Dismissal under Rule 12(b)(6) is appropriate when plaintiff's pleading, on its face, shows beyond a doubt that the

plaintiff cannot prove any facts that would entitle it to relief. *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). Here, the plaintiff's claims are subject to 12(b)(6) for three reasons: 1) U.S. law does not apply, and thus, the plaintiff has no claim under the Jones Act or general maritime law; 2) the plaintiff does not have a viable Jones Act claim against the named defendants as neither corporation is the plaintiff's employer; and 3) the plaintiff does not have a viable claim for unseaworthiness as the alleged incident took place in a swimming pool onshore in Saudi Arabia and was not caused by a vessel.

1. **The Plaintiff Cannot Recover Under the Jones Act or General Maritime Law as United States Law Does Not Apply**

As discussed at length above, United States law does not apply to this incident as the alleged tortious conduct occurred onshore in Saudi Arabia and involved foreign corporate defendants from the United Kingdom and Cayman Islands who have insufficient business contacts with the United States. After assessing the *Lauritzen-Rhoditis* factors, this Court should only apply Saudi Arabian or British substantive law to this matter. As such, the plaintiff has no cognizable claim under the Jones Act or general maritime law and his claims should be dismissed, with prejudice.

2. **The Plaintiff Cannot Recover Against the Defendants as Neither Corporation is His Employer**

Even if this Court finds that United States law does apply, the plaintiff cannot recover under the Jones Act. It is well-established that for a seaman to recover for his injuries under the Jones Act, an employer-employee relationship must exist. *Cosmopolitan v. McAllister*, 337 U.S. 783, 790, 93 L. Ed. 1692, 69 S.Ct. 1317 (1949); *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 225 (5th Cir. 1975); *Cordova v. Crowley Marine Servs.*, 2003 U.S. Dist. LEXIS 13553, at *7 (E.D.

La. 2003). The Supreme Court has stated that under the Jones Act, there can only be one employer:

> Yet this court may not disregard the plain and rational meaning of employment and employer to furnish a seaman a cause of action against one completely outside the broadest lines or definitions of employment or employer. **We have no doubt that, under the Jones Act, only one person, firm or corporation can be sued as employer.**

*Cosmopolitan Shipping Co*, 337 U.S at 791 (emphasis added). Thus, in order for ENSCO International or ENSCO plc to be liable under the Jones Act for the plaintiff's alleged injuries, they must be the plaintiff's employers. However, neither ENSCO International nor ENSCO plc ever employed the plaintiff. Rather, the plaintiff was employed by ENSCO Limited. *Exhibits 1 and 2*. As there is no employment relationship between the plaintiff and ENSCO International or ENSCO plc, the plaintiff's Jones Act claim must be dismissed

Furthermore, it should be noted that ENSCO plc, as the parent corporation, does not possess sufficient control over ENSCO Limited to be considered the plaintiff's Jones Act employer. In regards to determining whether a parent corporation or a subsidiary is a Jones Act employer, the court must determine whether the subsidiary is a "mere instrumentality" of the parent corporation that is actually dominated and controlled by the parent. *Williams v. McAllister Bros., Inc.*, 534 F.2d 19, 21 (2nd Cir. 1976). This analysis is akin to that of determining whether or not a plaintiff may pierce the corporate veil, where the court must find that the parent's control "amounts to total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." *Baker v. Raymond International*, *Inc.*, 656 F.2d 173 (5th Cir. 1981).

This is notably an extremely high burden as the stockholders of an adequately capitalized and legally operated corporation are immune from liability of the corporation's debts in the absence of exceptional circumstances. *See, e.g., Williams*, 534 F.2d at 21 (reasoned that it was doubtful that the appellant would have succeeded in showing that parent, rather than subsidiary, was his Jones Act employer despite the evidence that parent owned all of subsidiary's stock, subsidiary's key officers and directors were from the parent family, the subsidiary worked within the framework of the parent's policies, and the parent had to be informed and concur in major repairs); *Cordova v. Crowley Marine Servs.*, 2003 U.S. Dist. LEXIS 13567 (E.D. La. 2003) (parent corporation's involvement with maintenance and cure claim, communications with vessel, and plaintiff's perception that parent was his employer were insufficient grounds to hold parent liable under the Jones Act); *Selser v. Pacific Motor Trucking Co.*, 770 F.2d 551 (5th Cir. 1981) (even though parent and wholly-owned subsidiary shared executive, engineering, communication, police, contract, and legal services, the parent was not held to be liable for the employee of the subsidiary in a FELA personal injury suit because subsidiary still sets its own policies and controls its own operations.)

Here, ENSCO plc does not have sufficient control over ENSCO Limited to justify the drastic action of piercing the corporate veil. ENSCO Limited maintains all corporate formalities as a distinct and separate foreign subsidiary headquartered in the Cayman Islands. *See Exhibits 1 and 2*. ENSCO Limited further manages its own operations and has its own separate officers and directors that are distinct from those of ENSCO plc. *Id.* As espoused in the *Cordova* and *Selser* decisions, the mere fact that the plaintiff "believed" ENSCO plc was his employer is insufficient for holding the foreign parent corporation liable. Considering ENSCO Limited was the plaintiff's

16

sole employer and maintained corporate formalities, any claim under the Jones Act against ENSCO plc or ENSCO International must be dismissed.

**3.   The Plaintiff Has Failed to State a Viable Unseaworthiness Claim**

The plaintiff further cannot recover from ENSCO plc or ENSCO International for the *ENSCO 88's* alleged unseaworthiness as neither of these entities ever owned or controlled the vessel. A vessel owner owes a non-delegable duty to provide a seaworthy vessel that is reasonably fit for its intended uses. *Chandris, Inc. v. Latsis*, 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995); *Bommarito v. Penrod Drilling Corp.*, 929 F.2d 186, 190 n. 2 (5th Cir. 1991). Here, however, the *ENSCO 88* is a Liberian-flagged vessel owned by ENSCO Offshore International Company. *Exhibits 1* and *2*. With no evidence of ownership or control, the plaintiff cannot assert an unseaworthiness claim against the named defendants.

Furthermore, the plaintiff's unseaworthiness claim is predicated on allegations that "the crew of the *ENSCO 88* was inadequate and incompetent" because the crew leadership failed to recognize the hazards of an onshore water survival training course before requiring the plaintiff to attend. (R. Doc. 1, ¶ 20-22). Even if these facts are presumed to be true, they do not give rise to a claim of unseaworthiness.

In order to bring an unseaworthiness claim, a seaman must prove that the vessel owner failed to provide a vessel, including equipment and crew, which is reasonably safe. *Boudreaux v. United States of America*, 280 F.3d 461, 468 (5th Cir. 2002). However, unseaworthiness may not be based on an "isolated, personal negligent act." *Usner v. Luckenback Overseas Corp.*, 400 U.S. 494, 500, 91 S.Ct. 514, 27 L.Ed.2d 562 (1971). Rather, an unseaworthiness claim must be predicated on a condition that persists for such a time as to be related to a vessel. *See Kyzar v. Vale Do Ri Doce Navegacai, S.A.*, 464 F.2d 285, 290-91 (5th Cir. 1972) (unseaworthiness

involving an unfit crew must involve a continuous course of negligence conduct); *Owens v. Abdon Callais Offshore, LLC*, 2011 U.S. Dist. LEXIS 92856, at *14-15 (E.D. La. 8/19/11) (captains' negligence in overloading a vessel did not give rise to an unseaworthiness claim based on an unfit crew as there was no evidence that captains' negligence was deficient beyond this isolated incident).

Here, there is no evidence that the *ENSCO 88* was involved as the accident took place onshore and away from the vessel. Further, as in the *Kyzar* and *Owens* decisions, even if we presume that the crew leadership of the *ENSCO 88* failed to recognize the potential hazards of the training course, this failure amounts to a single, isolated act of negligence rather than persistent conduct, and thus, cannot support a claim of unseaworthiness. As such, the plaintiff's claim must be dismissed.

## **CONCLUSION**

The plaintiff's claims are not subject to the jurisdiction of this Honorable Court considering they are not governed by U.S. law and involve alleged injuries that occurred onshore in Saudi Arabia. At the very least, the foreign nature of these claims are subject to dismissal on *forum non conveniens* grounds. Alternatively, the plaintiff's Jones Act and unseaworthiness claims are subject to dismissal on 12(b)(6) grounds considering U.S. law does not apply, ENSCO plc and ENSCO International were never employers of the plaintiff, and the alleged injuries occurred onshore and were not caused by an unseaworthy condition of the *ENSCO 88*. Accordingly, this Court should dismiss the plaintiff's claims, with prejudice.

Respectfully submitted,

*/s/ Delos E. Flint, Jr.*

DELOS E. FLINT, JR. T.A. (#5616)
RYAN T. MARTIN (#35227)
FOWLER, RODRIGUEZ, FLINT, GRAY,
McCOY & SULLIVAN, LLP
400 Poydras Street, 30th Floor
New Orleans, Louisiana 70130
TEL:   (504) 523-2600
FAX:   (504) 523-2705
E-Mail: dflint@frfirm.com
E-Mail: rmartin@frfirm.com
*Attorneys for ENSCO plc and ENSCO International*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of June, 2016, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Delos E. Flint, Jr.*